**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARY BILEK, individually and on behalf of others similarly situated, | ) | Case No. 1:19-cv-07739 |
| Plaintiff, | ) | |
| v. | ) | |
| SALMAN HUSSAIN, USHEALTH ADVISORS, LLC, and DOES 1-10, | ) | **Jury Trial Demanded** |
| Defendants. | ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. Plaintiff Mary Bilek brings this action against Defendants Salman Hussain ("Hussain") and USHEALTH Advisors, LLC ("USHEALTH"), to secure redress for Defendants' practice of causing calls to be made to the cellular telephone numbers of Plaintiff and others using an automatic telephone dialing system and prerecorded voice, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, for violating the TCPA's do-not-call rules, and for violating the Illinois Automatic Telephone Dialer Act's prohibitions against prerecorded telemarketing and Caller ID spoofing during telemarketing calls, 815 ILCS 305/1 *et seq*.

**INTRODUCTION**

2. Advancements in telephone dialing technology by the 1980s and 90s made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money. As a result, the federal government and numerous states have enacted legislation to

combat these widespread telecommunications abuses. As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes…. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Pub. L. No. 102-243, 105 Stat. 2394 § 2(6, 12) (1991).

3. As is relevant here, federal law under the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(b)(3).

4. The TCPA further prohibits "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d). The TCPA provides for injunctive relief and the greater of actual damages or up to $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(c)(5).

5. The FCC—which develops the rules and regulations implementing the TCPA—has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, at ¶ 13 (1995).

6. The FCC has "repeatedly acknowledged the existence of vicarious liability under

the TCPA." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574 (2013) ("*FCC 2013 Ruling*")). In addition to formal agency, principles of apparent authority and ratification may also provide a basis for vicarious seller liability for TCPA violations. *FCC 2013 Ruling*, 28 FCC Rcd. at 6584 ¶ 28.

7. Defendants caused automated calls to be made to Plaintiff's cell phone without her consent, and despite their failure to institute proper procedures for maintaining an internal do-not-call list, and Plaintiff files this class action complaint on behalf of herself and others similarly situated, seeking relief from Defendants' illegal calling practices.

**PARTIES**

8. Plaintiff Mary Bilek is a natural person who resides in Cook County, Illinois.

9. Defendant Salman Hussain is a natural person who resides in Broward County, Florida.

10. Defendant USHEALTH Advisors, LLC is a Texas limited liability company with a principal place of business at 300 Burnett Street, Suite 200, Fort Worth, Texas 76102. USHEALTH conducts regular and continuous business in the State of Illinois, including the facilitation of insurance for Illinois consumers. To that end, USHEALTH maintains a registered agent in this District of CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

11. DOES 1-10 are yet-unidentified persons or entities involved in facilitating or benefitting from the lead generation or calling at issue.

**JURISDICTION AND VENUE**

12. This Court has federal question subject matter jurisdiction over this action

pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's TCPA claims. *Mims v. Arrow Financial Services, Inc.*, 132 S. Ct. 740 (2012).

13. The Court has supplemental jurisdiction over Plaintiff's Illinois state law claims pursuant to 28 U.S.C. § 1367, because they are based on the same calls and so related to Plaintiff's federal TCPA claims that they form part of the same case or controversy.

14. The Court also has Class Action Fairness Act jurisdiction, because there are more than 100 class members, at least one class member is a citizen of a different state from where any Defendant is a citizen, and because the aggregate damages exceed $5,000,000, exclusive of fees, costs and interest.

15. The Court has personal jurisdiction over Defendants and venue is appropriate in this District under 28 U.S.C. § 1391(a) because Defendants do business in this District, caused the calls that are the subject of this lawsuit to be made to Plaintiff and others in this District, provided products and services purchased through the calling at issue here, and because a substantial portion of the events giving rise to this cause of action occurred in this District.

**FACTS**

16. Defendant Hussain is a principal of a health insurance telemarketing business operating under the name "Health Coverage One."

17. During all relevant times hereto, Hussain or those with whom he operates Health Coverage One, such as his family members Samar Hussain and Sohail Hussain, were appointed insurance agents for insurance sold through Defendant USHEALTH.

18. USHEALTH uses insurance agents like Hussain to generate sales of its insurance-related goods and services, including by phone, and insists that its agents sell its products and services, including insurance policies, exclusively. Agents such as Hussain are not allowed to

sell other products or services, other than through USHEALTH.

19. Relevant here, on or about July 31, 2018, Hussain—individually and in his capacity as to Health Coverage One—entered into a Broadcaster Service Agreement with dialer provider MSB Consultants, Inc. d/b/a ExclusiveLiveLeads.com ("MSB"), for the provision of mass telephone dialing services. Hussain's contract with MSB is attached as Exhibit A.

20. The intent behind Hussain contracting with MSB was for Hussain and Health Coverage One to send prerecorded messages to consumers' phone numbers *en masse*, for purposes of soliciting the sale of USHEALTH's products and services.

21. Under their arrangement, Hussain/Health Coverage One provided the phone numbers to be called to MSB, and thereafter paid MSB based on how many live transfers were received, i.e., how many consumers "pressed 1" to be connected to a sales agent.

22. Hussain/Health Coverage One controlled all key aspects of these calls through routine instructions to MSB, including providing it with the lists of phone numbers to which the calls were made, and instructing it when to place such calls, what message was to be played, and on pacing, including in order to ensure that the live transfers came in at a sufficient rate to allow Hussain's call center representatives to handle them.

23. On information and belief, both Defendants approved the form and content of these automated messages, and the scripts used after the consumer "pressed 1."

24. Plaintiff received multiple calls for Defendants that Hussain/Health Coverage One made through their dialer MSB.

25. For example, on March 1, 2019, Plaintiff received a call at her cellular telephone number from caller ID (580) 297-7424, which left the following voicemail message:

> ... Blue Shield, calling to inform you of our new, low-cost, high-quality health plans. Press "1" and act now to speak with a Blue Cross agent. To stop further

notices, press "2" to be placed on the do-not-call list.

26. The caller ID for the calls to Plaintiff and the class were spoofed, insofar as the phone number from which the calls originated was manipulated.

27. All or most of the calls at issue "spoofed" the caller ID to make it appear that the calls originated from someone other than Defendants, and to trick recipients into answering so Defendants' sales pitch could begin.

28. Spoofing also has the purpose and effect of lowering the probability that Defendants will get caught. This, coupled with the fact that Defendants' prerecorded messages do not identify the caller or seller, permits Defendants to make a shocking number of robocalls with relative impunity.

29. Thus – by design, in order to attempt to evade TCPA liability – only consumers who indicate an interest when presented with the prerecorded message are told who made the calls, and what is being sold.

30. Upon information and belief, Plaintiff received other calls from or on behalf of Defendants, too, including but not limited to on February 25, 2019.

31. Notwithstanding the prerecorded message's reference to "Blue Cross," these calls to Plaintiff's cell phone number, and to the classes defined below, were made to generate business for USHEALTH.

32. Indeed, call recipients who "pressed 1" to speak with an agent were routed to Hussain or others whom he/Health Coverage One paid to work as call center representatives, and thereafter solicited to purchase USHEALTH products and services.

33. Defendants' telemarketing was prolific: MSB has produced approximately 16,825,249 unique records of calls by Hussain/Health Coverage One to consumers' phone

numbers, including the above calls to Plaintiff, all made to advertise for USHEALTH and the insurance companies whose products and services it sells.

34. USHEALTH controls the states into which calls are made and where insurance policies are written, and knowingly permits such calls to be made into the State of Illinois for purposes of soliciting health insurance customers in Illinois.

35. Defendants' calls to Plaintiff's cell phone number (and to the phone numbers of other class members) were made using an artificial or prerecorded voice, as evidenced by, for example, its awkward pacing and intonation that audibly differed from a "live" human voice, as well as its instruction that Plaintiff "press 1" or "press 2."

36. Defendants' calls to the cell phones of Plaintiff and others were made using an automatic telephone dialing system ("autodialer" or "ATDS") under the TCPA. The equipment had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. No human being physically dialed each digit of Plaintiff's and the other class members' telephone numbers to call their phones—the calls were made using equipment with the capacity to dial a large number of phone numbers in a short period of time, without human intervention.

37. Many of these call recipients were sent more than one call, like Plaintiff.

38. Plaintiff has never been a customer of Defendants.

39. Neither Defendant had permission or consent to make these calls to Plaintiff or the other class members.

40. Defendants knew they did not have the consent of Plaintiff and other class members for these calls.

41. Defendants' business model is to knowingly call cellular telephone numbers

without consent to call, including using an autodialer and/or an artificial or prerecorded voice, and without implementation of required do-not-call policies.

42. Indeed, during the time of its calls, Hussain/Health Coverage One lacked any written do-not-call policy, and their calls were made without identifying themselves or USHEALTH in the prerecorded message.

43. USHEALTH knew Hussain/Health Coverage One did not have a written do-not-call policy and weren't properly identifying themselves or USHEALTH despite engaging in telemarketing on its behalf. Alternatively, USHEALTH never bothered to confirm whether they had a written do-not-call policy and were supplying proper identification or not, despite having the ability and right to do so.

44. USHEALTH has at all relevant times maintained the power and right to control those it uses to solicit business on its behalf, including agents like Hussain/Health Coverage One.

45. USHEALTH agents that were employees or principals of Health Coverage One communicated directly with MSB, to help direct the robocalls at issue in this case.

46. USHEALTH retained the contractual right to give interim instructions, and to dictate special rules and regulations as to marketing, at its sole discretion.

47. USHEALTH retained the specific right to direct that Hussain/Health Coverage One call particular consumers, in order to sell products and services.

48. USHEALTH retained the right to demand and audit any records it desires from Hussain/Health Coverage One, with regard with marketing and otherwise.

49. USHEALTH retained the right to terminate its relationship with Hussain/Health Coverage One at any time and in its sole discretion for any reason.

50. USHEALTH retained the right to provide interim instructions to Hussain and

other agents as to the scope, nature, and manner of their telemarketing, such as what potential customers to target in what specific geographic areas and how, to control the branding and pricing for the goods and services solicited, to make employment decisions such as what persons may serve as USHEALTH agents under them, and to unilaterally terminate the relationship by revoking the agent's authority to market and sell its goods and services.

51. USHEALTH knew that Hussain/Health Coverage One was using MSB to send telemarketing calls, and authorized it.

52. For instance, on information and belief, USHEALTH provided or paid for the list of potential leads Hussain/Health Coverage One called through MSB.

53. Indeed, it is USHEALTH's practice to support its agents like Hussain/Health Coverage One through such lead supply or purchasing arrangements. *See, e.g.*, https://www.ushacareers.com/careers/support/ ("USHEALTH Advisors funds the purchase of targeted, pre-qualified leads from proven marketing channels. We work closely with local sales leaders to identify the most effective lead sources in the market.").

54. USHEALTH also provided direct training to Hussain and others affiliated with Health Coverage One regarding its products and services, as well as how to market them on USHEALTH's behalf, gave them access to detailed, proprietary and confidential information regarding the nature and pricing of its products and services for purposes of generating sales derived from the calling at issue, and gave them the ability to enter consumer information directly into its systems, including through a shared online portal USHEALTH provided for purposes of tracking and handling consumer transactions arising from the telemarketing at issue. *See, e.g.*, https://www.ushacareers.com/careers/training/ ("USHEALTH Advisors offers comprehensive training opportunities to help you reach your full career potential[,] … [f]rom

online national webinars and web-based product certification to local field training…. We [also] provide our agents with a platform that is second-to-none in our industry.”).

55. USHEALTH also enjoys the ability and right to audit Hussain and other agents with respect to compliance with telemarketing laws.

56. USHEALTH authorized, or gave the appearance of authority for, the calls at issue on its behalf—including by permitting the use of its tradename to facilitate transactions during such calls, appointing Hussain and others at Health Coverage One as agents, compensating Hussain/Health Coverage One for business derived from illegal telemarketing, permitting Hussain/Health Coverage One access and use of an internet-based portal to track and record sales of USHEALTH goods and services derived from such business generation efforts, and retaining revenue and providing the goods and services purchased as a result of such.

57. USHEALTH was aware of the nature of the telemarketing through which Plaintiff and the classes were called—including that automated calls were being made to consumers irrespective of consent, and despite Hussain/Health Coverage One’s lack of a proper do-not-call policy—but continued to accept business derived from such, anyways.

58. USHEALTH knowingly accepted advertising benefits and sales that originated through nonconsensual telemarketing calls, compensated Hussain/Health Coverage One for sales derived from it, and thereafter provided the products and services purchased through the calling and retained revenue from such.

59. Alternatively, USHEALTH accepted these benefits of the calls at issue without adequately addressing deficiencies in its and Hussain/Health Coverage One’s telemarketing practices, despite knowledge that would have caused a reasonable person to investigate further—such as being sued repeatedly in the past for TCPA violations arising from the same practices

that resulted in the calls at issue here. *E.g., Fitzhenry v. USHEALTH Group, Inc. et al.*, No. 2:15-cv-03062 (D.S.C. filed Aug. 4, 2015) (putative class action alleging violation of TCPA robocall rules by Defendant); *DesJardins v. USHealth Advisors, LLC*, No. 3:16-cv-05152 (W.D. Wash. filed Feb. 25, 2016) (similar TCPA allegations in putative class action).

60. Plaintiff and the classes have been damaged by Defendants' calls. Their privacy was improperly invaded, Defendants' calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls. Defendants' calls were annoying and a nuisance, and wasted the time of Plaintiff and the classes. *See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

## CLASS ACTION ALLEGATIONS

61. Plaintiff brings this action under Federal Rules of Civil Procedure 23(b)(2) and (b)(3), on behalf of the following classes:

> **Robocall Class.** All persons in the United States whose cellular telephone number Defendants or some third party on their behalf called using an artificial or prerecorded voice or the same or similar dialing system used to call Plaintiff, where no Defendant had before such call a signed, written agreement with the recipient that included a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes either Defendant to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) the person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
> > **Illinois Subclass:** Plaintiff alleges a subclass of persons who resided in Illinois when they received the above robocalls.
>
> **Internal DNC Class:** All non-customers of Defendants within the United States to whom Defendants or someone on their behalf initiated more than one call for the purpose of encouraging the purchase of USHEALTH goods or services within any 12-month period.

62. Upon information and belief, there were more than 1,000 non-customers whose

residential cell phone number Defendants or a third-party on their behalf called at least twice for telemarketing purposes without permission using a prerecorded-voice message in 2019.

63. Common questions of law or fact exist as to all members of the class, which predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common to the class include but are not limited to:

a. Whether the calls to Plaintiff and the class were made using an automatic telephone dialing system or an artificial or prerecorded voice, as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

b. Whether Defendants established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations; and

c. Whether Defendants had prior express consent, or prior express invitation or permission, to call the cell phone numbers of Plaintiff and the other class members; and

d. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other members of the class are entitled to treble damages under 47 U.S.C. § 227(b)(3) or 47 U.S.C. § 227(c)(5).

64. Plaintiff's claims are typical of the claims of the other members of the class. The factual and legal bases of Defendants' liability to Plaintiff and the other members of the class are the same: Defendants violated the TCPA by causing multiple automated telemarketing calls to be made to the cellular telephone number of each member of the Robocall Class and Illinois Subclass, without permission, without having implemented a proper internal do-not-call policy

(as to the Internal DNC Class).

65. Plaintiff will fairly and adequately protect the interests of each class. Plaintiff has no interests that might conflict with the interests of the classes. Plaintiff is interested in pursuing her claims vigorously, and she has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

66. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail. There are, on information and belief, thousands of members of each class, such that joinder of all members is impracticable.

67. No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

68. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other class members, thereby making relief appropriate with respect to each class as a whole. Prosecution of separate actions by individual members of the class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

69. The identity of the classes is, on information and belief, readily identifiable from Defendants' and their vendors' records.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Robocall Class)**

70. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein. This Count I is brought by Plaintiff Bilek on behalf of herself and the Robocall Class.

71. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

72. Defendants initiated or caused to be initiated calls to the cellular telephone numbers of Plaintiff and the other members of the Robocall Class using an automatic telephone dialing system, as well as with an artificial or prerecorded voice. These calls were made without regard to whether or not Defendants had previously obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and the other members of the class when the calls were made.

73. These calls were willful or knowing.

74. Defendants violated the TCPA by making non-emergency calls to the cell phone numbers of Plaintiff and the other members of the Robocall Class using an artificial or prerecorded voice, without prior express consent.

75. To the extent that some of the calls to Plaintiff and the Robocall Class were made by vendors of Defendants, Defendants are liable for those calls, too.

76. As a result of Defendants' conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the Robocall Class were harmed and are each entitled to a minimum of $500 in damages for each violation. Plaintiff and the Robocall Class are also

entitled to an injunction against future calls. 47 U.S.C. § 227(b)(3).

77. Because Defendants knew or should have known that Plaintiff and the other members of the Robocall Class had not given prior express consent to receive their automated calls to their cell phones—and/or willfully caused automated calls to be made to the cell phones of Plaintiff and the other members of the Robocall Class without prior express consent—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the Robocall Class, pursuant to Section 227(b)(3) of the TCPA.

WHEREFORE, Plaintiff Mary Bilek, individually and on behalf of the Robocall Class, respectfully requests that the Court enter judgment against Defendants for:

A. Certification of the Robocall Class as alleged herein;

B. A declaration that Defendants violated the TCPA as to Plaintiff and the Robocall Class;

C. Damages, pursuant to 47 U.S.C. § 227(b)(3);

D. Injunctive relief, pursuant to 47 U.S.C. § 227(b)(3), aimed at ensuring the prevention of Defendants from violating the TCPA in the future, including:

1. Requiring Defendants to hire a Court-approved, independent auditing company to (a) investigate all allegations of TCPA violations, and (b) audit no less than 10% of Defendants' outbound calls – including calls originating from lead generators – to ensure that Defendants had consent and that the consumer had not previously asked that calls stop, and (c) report the results of the above investigations to the Court and Plaintiff's counsel on a

quarterly basis for no less than five years.

2. Requiring Defendants to include a working, automated IVR opt-out mechanism at the beginning of any and all prerecorded-voice calls;

E. Attorneys' fees and costs, as permitted by law; and

F. Such other or further relief as the Court deems just and proper.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Internal DNC Class)**

78. Plaintiff re-alleges and incorporates Paragraphs 1-69 above as if fully set forth herein. This Count II is brought by Plaintiff on behalf of herself and the Internal DNC Class.

79. It is a violation of the TCPA to "initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). The procedures instituted must meet certain minimum standards, including but not limited to: (1) having a written policy, available on demand, for maintaining a do-not-call list; (2) informing and training personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list; (3) recording and honoring do-not-call requests; (4) identifying the caller and person or entity on whose behalf the telemarketing call is being made; (5) applying the do-not-call request to the particular business entity making the call or on whose behalf the call is made; and (6) maintaining a record of a request not to receive further telemarketing calls and honoring such for at least five years from the time the request is made. *Id.*

80. It is a violation of the TCPA to accept business derived from telemarketing

initiated by an entity that does not have a written Do Not Call policy, that fails to identify itself or the seller, or that does not adhere to a policy that exists that would otherwise meet the above minimum standards. Defendants did this.

81. Defendants caused to be initiated calls to the telephone numbers of Plaintiff and the other members of the Internal DNC Class in violation of these regulations. The reason for the noncompliant calls is that Defendants failed to institute a telemarketing policy that complied with 47 C.F.R. § 64.1200(d). Alternatively or additionally, Defendants unreasonably and willfully failed to adhere to any policies that might have complied with the letter of 47 C.F.R. § 64.1200(d), thus causing the violative calls.

82. The prerecorded messages at issue failed to identify the caller and sellers. 47 C.F.R. § 64.1200(d)(4). This was by design: USHEALTH did not require its agents like Hussain to state this information during phone calls, so that USHEALTH could continue to accept business from the calls while minimizing legal exposure.

83. These violations were willful or knowing.

84. As a result of Defendants' violations of the TCPA's internal do-not-call rule, Plaintiff and the other members of the Internal DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

85. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

WHEREFORE, Plaintiff, individually and on behalf of the Internal DNC Class, respectfully requests that the Court enter judgment against Defendants for:

A. Certification of the Internal DNC Class as alleged herein;

B. Damages, pursuant to 47 U.S.C. § 227(c)(5);

C. Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at ensuring the prevention of TCPA violations in the future;

D. Attorneys' fees and costs, as permitted by law; and

E. Such other or further relief as the Court deems just and proper.

**COUNT III**
**Prerecorded Message Violations of the ATDA, 815 ILCS 305/1 *et seq.***
**(On Behalf of Plaintiff and the Illinois Subclass)**

86. Plaintiff re-alleges and incorporates Paragraphs 1-69 above as if fully set forth herein. This Count III is brought by Plaintiff on behalf of herself and the Illinois Subclass.

87. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

88. Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a).[1]

89. A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c).

90. Defendants did not have the consent of Plaintiff or the other members of the Illinois Subclass to play a prerecorded message placed by an autodialer.

91. Nonetheless, Defendants caused calls to be made to the phones of Plaintiff and the other members of the Illinois Subclass using a telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone

---

[1] The term "autodialer" or "autodialer system" does not include "device[s] associated with a burglar alarm system, voice message system or fire alarm system." 815 ILCS 305/5(a).

with a recorded message. No human being physically dialed each digit of Plaintiff's or the other Illinois Subclass members' phone numbers to connect their telephones with a recorded message.

92. Defendants' prerecorded messages to the phones of Plaintiff and the other Illinois Subclass members included language soliciting the sale of goods or services without live voice interaction, including offering insurance products.

93. Consequently, Defendants violated the ATDA by playing a prerecorded message placed by an autodialer during calls to the phones of Plaintiff and the other Illinois Subclass members, without such persons' consent.

94. As a result of Defendants' conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the Illinois Subclass were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

WHEREFORE, Plaintiff, individually and on behalf of the Illinois Subclass, respectfully requests that the Court enter judgment against Defendants for:

A. Damages, pursuant to 815 ILCS 305/30;

B. Attorneys' fees and costs, as permitted by law; and

C. Such other or further relief as the Court deems just and proper.

**COUNT IV**
**Caller ID Spoofing Violations of the ATDA, 815 ILCS 305/1 *et seq.***
**(On Behalf of Plaintiff and the Illinois Subclass)**

95. Plaintiff re-alleges and incorporates Paragraphs 1-69 above as if fully set forth herein. This Count IV is brought by Plaintiff on behalf of herself and the Illinois Subclass.

96. The ATDA prohibits "mak[ing] or caus[ing] to be made telephone calls utilizing an autodialer in a manner that does not comply with Section 15." 815 ILCS 305/30(a).

97. Section 15 of the ATDA, in turn, provides that "[a]n autodialer may not be operated in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number." 815 ILCS 305/15(d).

98. Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a). A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c).

99. Defendants caused a prerecorded message soliciting the sale of insurance and health related goods and services to the phones of Plaintiff and the other members of the Illinois Subclass.

100. Specifically, Defendants' calls to Plaintiff and the other Illinois Subclass members were made by a telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers, which was programmed to sequentially or randomly access Plaintiff's and the other Illinois Subclass members' stored telephone numbers in order to automatically connect their telephones with a recorded message soliciting the sale of goods or services without live voice interaction.

101. While, on information and belief, the service or equipment used to make such calls was capable of allowing the display of its telephone number, Defendants or their vendor(s) impeded caller identification by using spoofed numbers during the calls to Plaintiff and the other members of the Illinois Subclass.

102. As a result of Defendant's conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the Illinois Subclass were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

WHEREFORE, Plaintiff, individually and on behalf of the Illinois Subclass, respectfully requests that the Court enter judgment against Defendants for:

A. Damages, pursuant to 815 ILCS 305/30;

B. Attorneys' fees and costs, as permitted by law; and

C. Such other or further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: October 27, 2020

MARY BILEK, individually and
on behalf of others similarly situated

By: *_/s/ Alexander H. Burke_*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

**Document Preservation Demand**

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, databases, call records, consent to receive autodialed or artificial or prerecorded voice calls, e-mails, recordings, documents, and all other tangible things that relate to the allegations herein, Plaintiff, or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale, or file associated with Plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If the Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of any Defendant.

*/s/ Alexander H. Burke*