**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARY BILEK, individually and on behalf of others similarly situated,<br>Plaintiff,<br><br>v.<br><br>SALMAN HUSSAIN, USHEALTH ADVISORS, LLC and DOES 1-10,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:19-cv-7739<br><br><br><br><br>Hon. Judge John J. Tharp, Jr.<br>Hon. Mag. Judge Susan E. Cox |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Salman Hussain contracted with MSB to make the illegal calls at issue on behalf of his business Health Coverage One, and thus necessarily has information and materials relevant to this action beyond the basic call data and one-page contract he has produced to-date. Hussain's primary objection—that he shouldn't have to produce the documents of his business—ignores the fact that he is co-owner with the right and ability to obtain such materials.

There is no valid reason for Hussain to refuse to provide the lead data relevant to the class, consent information, policy, practice, and procedure documents, and other materials applicable to this case. As further detailed herein, the Court should compel production.

**A. Health Coverage One's materials are in Hussain's possession, custody, or control.**

Hussain's unsupported argument that he "does not control all aspects of the company" is not the standard under which discovery may or may not be produced: What matters is that Hussain has the right to obtain the requested materials.[1] Defendant chose to operate Health Coverage One under an unregistered fake name, and he cannot now hide behind some non-

---

[1] *See Life Spine, Inc. v. Aegis Spine, Inc.*, 2020 WL 2219060, at *2 (N.D. Ill. May 7, 2020) ("A party does not need to have physical possession of documents to control them within the meaning of Rule 34; 'rather, the test is whether the party has a legal right to obtain them.'") (citation omitted).

existent corporate formality to forego production of relevant discovery. *See Worm World, Inc. v. Ironwood Prods., Inc.*, 917 So. 2d 274, 275 (Fla. Dist. Ct. App. 2005) ("A fictitious name has no independent legal existence."). Moreover, regardless of whether a separate legal entity can validly exist for an unregistered DBA, Hussain is an officer and co-owner of SSS Total Funding, Inc., too, which he operates with family members Sohail and Samar Hussain.[2] Thus, the suggestion that Hussain "can't" produce Health Coverage One's materials is groundless. *See SRAM, LLC v. Hayes Bicycle Grp., Inc.*, 2013 WL 6490252, at *4 (N.D. Ill. Dec. 10, 2013) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 2009 WL 529224, at *2 (S.D.N.Y. Feb. 17, 2009), for point that "[a] party's control over third-party documents extends to the records of a corporation for which the party serves as an officer"). And Hussain has provided no affidavit or other admissible factual showing that he has even *tried* to obtain the materials; much less that those efforts were fruitless.

To the contrary, Hussain has affirmatively *proven* his right to obtain materials for Health Coverage One by obtaining and producing the inbound call transfer data Health Coverage One received from its vendor MSB. He should be compelled to produce the rest of the materials sought.

**B. Hussain should produce all lead data.**

Hussain has not produced his lead data and information responsive to ROG 2 and RFP 3. What he produced was Health Coverage One's inbound *call* data for consumers who were transferred into its call center during a call that originated from Hussain's robocall vendor MSB. He has not produced the actual lead data and information reflecting, for example, what consumer

---

[2] *See* http://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=domp-p14000067302-38161973-52b4-4848-b8b6-f3e7823cc7b8&transactionId=p14000067302-a059e715-41bc-43e9-bd39-64cf1b2da2d6&formatType=PDF.

the lead involved, what products or services were offered or sold during the call and for whom, and consideration exchanged.

Hussain is wrong that lead information is irrelevant. From Day One, Plaintiff has sought to identify and replace her Doe Defendants with the other involved actors on whose behalf Hussain made the illegal calls at issue. *See* Dkt. 1, Compl. ¶ 7 (asserting claims against Doe Defendants as "yet-unidentified persons or entities involved in facilitating the lead generation or calling at issue"). Indeed, a primary purpose in opening discovery after Hussain defaulted was to identify these entities and their relation to the calling at issue—which Judge Tharp granted. Dkt. 7 ¶ 3 ("Plaintiff seeks to identify the true identities of the Doe Defendants who likewise participated in the calling at issue, whom she anticipates naming as defendants."); Dkt. 10. It is well-settled under the TCPA that sellers may be subject to vicarious liability for violations made on their behalf,[3] and there is no "fishing expedition" in legitimately trying to identify the entities who share liability with Hussain for the illegal calling Plaintiff sued about, and which undoubtedly possess information regarding the lead generation at issue, in any event.

Not only that, but lead information is relevant to establishing the identities of class members and commonality among the different consumers subject to the lead generation at issue, as well as Hussain's *own* liability based on his knowing retention of the monetary benefits in connection with these telemarketing-based leads.

Hussain's burden and proportionality argument is also baseless. This lead data is critical to Plaintiff's ability to identify those other involved entities with relevant information concerning

[3] *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 742 (N.D. Ill. 2014) ("[A] seller who does not initiate a call nonetheless may be held vicariously liable under federal common law principles of agency for violations ... that are committed by third-party telemarketers[,] ... [including] 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'") (quoting *In re Joint Petition Filed by Dish Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶¶ 24-26, 28 (2013)).

the lead generation at issue, and to Plaintiff's ability to prove their liability for associated calls to the extent they are added as defendants. It may be that some percentage of the calls in the call data aren't even actionable (for example, if the call was made to a current customer with whom the insurer has consent), but Plaintiff won't even be able to begin making that determination until the corresponding lead data is provided. Hussain's proportionality argument, therefore, fails in comparison to the essential nature of this information.

Moreover, proportionality balances importance to the case against the burden of production. Fed.R.Civ.P. 26(b)(1). Indeed, a "[c]ourt cannot sustain a proportionality objection without a specific showing of the burden that the objecting party would endure and why it is disproportionate to the needs of the case." *Belcastro v. United Airlines, Inc.*, 2019 WL 1651709, at *6 (N.D. Ill. Apr. 17, 2019), *objections overruled*, 2020 WL 1248343 (N.D. Ill. Mar. 15, 2020). And while Plaintiff has made the necessary arguments to show the relevance – indeed necessity – of obtaining the requested information, Hussain has offered zero evidence or showing that obtaining the requested materials would be difficult or expensive.

Hussain's argument that he should not be expected to determine whether his own company "conducted business with USHealth" shows the true colors under which he has conducted himself: It is not credible that Hussain lacks any awareness of who his business' clients are.[4] Plaintiff appreciates that Hussain is an individual, but he is also the co-owner of the business at the heart of the illegal telemarketing at issue. That he is an individual does not absolve him of his discovery obligations, particularly as to the lead data sought here that is fundamental to Plaintiff's ability to prove liability as to USHealth and any future defendant.

[4] Indeed, Hussain himself is an appointed agent of Golden Rule Insurance Company, with a former appointment with Freedom Life Insurance Company of America, both subsidiaries of USHealth's parent company UnitedHealth Group. *See* https://licenseesearch.fldfs.com/Licensee/1413892.

Moreover, this case is not limited to calls made on behalf of USHealth (Dkt. 38, FAC ¶ 61), so ROG 2 and RFP 3 are not limited to USHealth, either. Consequently, Hussain's suggestion that he will have to parse through the data to identify USHealth-specific information is plain wrong. All Defendant must do is produce the lead data for the call data he has already produced. Respectfully, this Court should follow the other courts that have compelled such information. *E.g.*, *United States v. Dish Network, L.L.C.*, 292 F.R.D. 593, 605 (C.D. Ill. 2013) (sanctioning seller for failing to produce lead list discovery in TCPA action); *O'Shea v. Am. Solar Sol., Inc.*, 2016 WL 701215, at *6 (S.D. Cal. Feb. 18, 2016) ("Defendant's business leads concern the source for phone numbers called by, or on behalf of, American Solar and bear on whether O'Shea or any of the putative class members provided consent to be called.").

**C. Consent discovery is inherently relevant and should be produced.**

Hussain's suggestion as to ROG 3 and RFP 15 that he won't know whether the issue of consent is relevant to this case until he files an answer to Plaintiff's complaint is a baseless delay tactic. Hussain was served with this lawsuit in January 2020. Dkt. 6. He was served with Plaintiff's discovery requests in March 2020. Dkt. 18-2. It is now November. Hussain has had eight months to locate this information. What he pleads in his answer doesn't change the facts, and neither does the fact that another defendant has since been added. He should have produced this information long ago.

Most importantly, consent is *always* relevant in TCPA cases, since Plaintiff needs to know which calls apply to class members and which don't in order to support her class certification briefing (i.e., to establish ascertainability and that common questions predominate

over any individualized consent issues), and to ultimately prove these violations on their merits.[5] Hussain should either produce the responsive materials that exist, or tell Plaintiff consent is not at issue. Either way, all consent evidence should be produced.

### D. Hussain should either produce his documents pertaining to his business organization and lead generation at issue.

Hussain's assertion that he "fully answered" ROG 5 and 6 and RFP 6 and 10 is demonstrably false. These discovery requests sought specific information asking Hussain to identify the responsible persons at his business who engaged in relevant activities applicable to the telemarketing and lead generation at issue (ROG 5), an explanation of Health Coverage One's business organizational structure (ROG 6), documents pertaining to Hussain's robocall provider MSB (RFP 6), and documents regarding the development or implementation of the telemarketing and lead generation at issue (RFP 10). Instead of providing real information, Hussain deflects and points fingers at MSB. This is non-responsive: It isn't sufficient to effectively say, "MSB acted on its own," when the point of these requests is to uncover what Hussain and his business have, know, and did.

Likewise, Hussain's brief's suggestion as to ROG 6 that he need not provide organizational information for Health Coverage One because it is a fictitious name is baseless. Regardless of whether Health Coverage One is a fictitious name or not, Hussain knows how his business functions, who's in charge, what is being sold, and who his employees are. These individuals have information relevant to their respective duties in Hussain's lead generation business, and they should be identified so that Plaintiff can pursue further investigation from

---

[5] *See* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting "mak[ing] any call (other than a call made for emergency purposes *or made with the prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service") (emphasis added).

people who have additional relevant information.

Hussain's refusal to produce "documents … that pertain to the development or implementation of telemarketing or lead generation campaigns or strategies" in response to RFP 10 again attempts to completely forego production on the basis that he shouldn't have to provide information for his business.[6] *E.g.*, Dkt. 44, Def.'s Resp. pp. 5-6 ("Hussain does not have communications with insurers offering insurance products for sale because Hussain does not have customers; SSS Total Funding has the customers."). But, again, "control" under the Federal Rules extends beyond mere possession, *see Life Spine, Inc.*, 2020 WL 2219060, at *2, and here not only is Health Coverage One effectively a pass-through to Hussain because it is an unregistered, fake business name, but Hussain owns and controls SSS Total Funding, Inc., too—as a closely-held, family business, no less. Enough of this shell game: Hussain has the right and ability to obtain these materials, and he should be compelled to do so without delay.

Plaintiff also disagrees that RFP 13's request for documents pertaining to the use and capacity of MSB or another dialer used to communicate with Plaintiff and the class is vague or confusing. Hussain's knowledge of how the calls at issue were made, and any associated policy, practice, and procedures developed in connection with such, is not only germane to establishing the merits of whether the calls violate the statute (e.g., that an autodialer or prerecorded voice was used); it is relevant to the appropriateness of treble damages under 47 U.S.C. § 227(b)(3), based on Hussain's knowledge and willfulness as to such. These materials should be produced.

**E. Hussain should produce all Plaintiff-related materials.**

Hussain has had Plaintiff's phone number since he was served with her discovery

[6] Hussain's assertion that he wasn't *personally* involved in the "telemarketing strategies" or "calling campaigns" also ignores his involvement in the lead generation strategies, of which he most certainly was personally involved, given his direct contracting his MSB. Hussain fails to explain why these materials weren't provided, even if he wasn't directly involved in providing the dial list to MSB.

requests in March 2020, and Plaintiff's counsel provided her number to his attorneys on September 3, 2020—nearly two months before she filed this motion.[7] In any event, while Hussain now says "he does not control documents indicating any call to Bilek," this is not entirely responsive because RFP 1 seeks all documents relating to Bilek, her phone number, or any other identifier. If there are no responsive documents, great (albeit implausible); but that's not what Hussain is saying. Plaintiff asks that Hussain conduct a thorough search and produce any and all responsive data or other documents. If it relates to Plaintiff, it is inherently relevant.

**F. Hussain should explain his data and produce all relevant materials received from third parties.**

Hussain's deflection as to ROG 4 that he doesn't *personally* know the meaning of his data's codes and did not *personally* manage or maintain the data he produced does not absolve him of investigating to determine what they mean. Again, "control" under the Federal Rules extends to information Hussain has the right to obtain, which he most certainly does as a co-owner of the business that produced it.[8] If Hussain truly doesn't know what these codes mean, then he should ask his brother or an employee or vendor who does.

Hussain's poor logic for not responding to RFP 16's request for documents received from any third party in this action—i.e., that third parties are not relevant because they are "by definition" not part of this action—is meritless. Plaintiff has long asserted that Hussain did not

---

[7] During the parties' meet-and-confer on September 3, 2020, defense counsel admitted that they drafted Hussain's responses using the redacted version of Plaintiff's requests that had been filed publicly as an exhibit to Plaintiff's motion, rather than the unredacted version served on Defendant—effectively using the public redaction of Plaintiff's cell number as a reason to not look for responsive materials.

[8] *See Trane Co. v. Klutznick*, 87 F.R.D. 473, 476 (W.D. Wis. 1980) ("[A]n official answering the interrogatories for a corporation had an affirmative duty to search out all information under the control of the corporation and could not evade answering the interrogatories based on his own limited knowledge. Although this rule of law is based, in part, on the theory that a corporation's knowledge is an amalgamation of the knowledge of each individual officer or employee, it is equally grounded on the theory that a party cannot plead personal ignorance as an excuse for not answering interrogatories if indeed the information is within his control.").

act alone: Her original complaint explicitly sued Doe Defendants representing "yet-unidentified persons or entities involved in facilitating the lead generation or calling at issue[,]" Dkt. 1 ¶ 7, and Judge Tharp opened discovery after Hussain defaulted based on Plaintiff's motion that explicitly sought to identify the other involved third parties. *See* Dkt. 7 ¶ 3 ("Plaintiff seeks to identify the true identities of the Doe Defendants who likewise participated in the calling at issue, whom she anticipates naming as defendants."). Even if Hussain did not physically place the calls at issue, he cannot deny that both he and the vendor with whom he contracted to do so, MSB, have produced records of *millions* of telemarketing calls and subsequent transfers to his business' call center for purposes of generating sales for heretofore undisclosed third-party products and services. Those third parties are inherently relevant, participated in or benefited from the illegal lead generation at issue, and should be identified. Hussain presents no valid reason for withholding the documents he has received from these or other third parties in this action, and he should be compelled to do so.

Finally, Hussain's argument that he can't produce documents relied on in drafting or referred to in his Rule 26(a)(1) disclosures because he hasn't submitted them yet ignores the fact that RFP 17 *also* seeks materials with respect to "any discovery requests." Hussain presents no objection or argument as to such materials, and he should thus be compelled to produce them.

## IV. CONCLUSION

For the foregoing reasons and as stated in Plaintiff's motion, Plaintiff respectfully asks that the Court enter an order: (1) compelling Hussain to produce full and complete responses to Plaintiff's Interrogatory Nos. 2-6 and Request for Production Nos. 1, 3, 6, 10, 13, and 15-17; (2) compelling Hussain to provide revised written discovery responses that properly conform with the Federal Rules' requirement that a respondent "state whether any responsive materials are

being withheld on the basis of [an] objection" and "specify the part [to which the respondent objects] and permit inspection of the rest[,]" Fed. R. Civ. P. 34(b)(2)(C), *cf.* Fed. R. Civ. P. 33(b)(3)-(4); and (3) granting such other and further relief the Court deems reasonable and just.

Respectfully submitted,

MARY BILEK, individually and on behalf of others similarly situated,

Dated: November 17, 2020

By: */s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis Street, Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2020, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Alexander H. Burke*